**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| INTIRION CORPORATION, | No. 23-CV-4023-CJW-KEM |
| Plaintiff/Counter Defendant, | **ORDER** |
| vs. | |
| COLLEGE PRODUCTS, INC., | |
| Defendant/Counter Claimant. | |

_____

## I. INTRODUCTION

This matter is before the Court on plaintiff/counter-defendant Intirion Corporation's ("Intirion") motion to stay. (Doc. 155). Defendant/counter-claimant College Products, Inc. ("College Products") filed a resistance. (Doc. 156). Intirion filed a reply. (Doc. 162). For the following reasons, the Court **grants** Intirion's motion and **stays** the litigation until the Patent Trial and Appeal Board ("PTAB") issues a final written decision on the post-grant review ("PGR") proceedings at issue. The Court does not decide at this time whether the case should be stayed pending exhaustion of any or all appeals from that decision.

## II. RELEVANT BACKGROUND

This case involves Intirion's allegations of patent infringement against College Products relating to a series of patents owned by Intirion: U.S. Patent Nos. 9,657,974 ("the '974 Patent"); 9,791,206 ("the '206 Patent"); 10,495,374 ("the '374 Patent"); 11,274,876 ("the '876 Patent"); 11,674,745 ("the '745 Patent"); and 11,674,746 ("the '746 Patent") (collectively, the "Patents-in-Suit"). All these patents belong to the same patent family, and each is titled "Multiple Linked Appliance with Auxiliary Outlet." The

Case 5:23-cv-04023-CJW-KEM   Document 166   Filed 08/09/24   Page 1 of 17

patents teach linked appliances capable of managing the electrical current supplied between the appliances to avoid overload conditions. In many embodiments, the linked appliances consist of a microwave and refrigerator combination unit.

Intirion initially filed this lawsuit in May 2022 in the United States District Court for the Western District of Texas. (Doc. 1). As Intirion's case was pending in Texas, College Products filed an action in this Court seeking a declaratory judgment of invalidity and non-infringement as to four of the six Patents-in-Suit. (At that time, Intirion had not yet obtained the '745 and '746 Patents, then-pending before the United States Patent and Trademark Office ("USPTO"), which the USPTO published to Intirion on June 13, 2023. *See* (Doc. 155-1, at 6 n.2).) Following a hearing in the Western District of Texas, that court transferred the case to this Court in April 2023. *See* (Docs. 33 & 35). On June 7, 2023, the Court consolidated the two actions (i.e., Intirion's action transferred from Texas and College Products' declaratory judgment action) into this case. (Doc. 56).

On June 28, 2023, Intirion filed its first amended complaint, which alleges infringement of the Patents-in-Suit (including the '745 and '746 Patents which Intirion acquired on June 13, 2023). (Doc. 62). Intirion's first amended complaint also alleges false advertising and unfair competition under the Lanham Act, as well as tortious interference with prospective business relations. (*Id.*).

On August 7, 2023, College Products filed its second amended answer and counterclaim, which alleges counterclaims seeking a declaratory judgment of invalidity and non-infringement of the Patents-in-Suit. (Doc. 70). College Products' second amended answer and counterclaim also alleged claims of unfair competition under the Lanham Act, tortious interference with prospective business relations, common law defamation, unenforceability of the '745 and '746 Patents due to inequitable conduct, and antitrust violations under Section 2 of the Sherman Act. (*Id.*).

On August 21, 2023, Intirion filed a partial motion to dismiss College Products' counterclaim seeking to dismiss all of College Products' counterclaims other than its counterclaims which seek a declaratory judgment of invalidity and non-infringement of the Patents-in-Suit . (Doc. 80).

On October 9, 2023, College Products petitioned the PTAB of the USPTO to institute PGR proceedings as to the '745 and '746 Patents.[1]  *See* (Doc. 154-2, at 1). College Products' petition as to the '745 Patent challenges the patentability of claims 1, 12–15, 19, 20, 22–25, and 26 on grounds of obviousness under Title 35, United States Code, Section 103 and claims 1–28 (all claims) based on indefiniteness under Title 35, United States Code, Section 112(b).  *See* (Doc. 154-3).  College Products' petition as to the '746 Patent challenges the patentability of claims 1–24 (all claims) on grounds of obviousness under Section 103 and indefiniteness under Section 112(b).  *See* (Doc. 154-5).

On March 19, 2024, the Court held a combined hearing for oral argument on Intirion's motion to dismiss along with a technology tutorial and *Markman* claim construction.  (Doc. 111).

On April 10, 2024—after the hearing but before the Court entered its claim construction Order—the PTAB instituted PGR on all claims of the '745 Patent and all claims of the '746 Patent.  (Docs. 154-3, at 2, 47; 154-4, at 2, 48).

On May 14, 2024, the Court entered an Order granting Intirion's partial motion to dismiss College Products' counterclaim, thereby dismissing College Products' claims of unfair competition under the Lanham Act, tortious interference with prospective business relations, common law defamation, unenforceability of the '745 and '746 Patents

---

[1] The '745 Patent and '746 Patent are the subject of Intirion's Counts V and VI alleging infringement and of College Products' Counterclaims IX through XII alleging invalidity and non-infringement.  (Docs. 62, at 18–22; 70, at 59–66).

due to inequitable conduct, and antitrust violations under Section 2 of the Sherman Act. (Doc. 127). Thus, only College Products' counterclaims seeking a declaratory judgment of invalidity and non-infringement of the Patents-in-Suit remain.[2]

On May 31, 2024, the Court entered an Order adopting claim constructions. (Doc. 140). The Court found the claim terms "level of smoke," "amount of smoke," and "dangerous condition" to be indefinite as a matter of law. (*Id.*, at 14–22). The Court's indefiniteness ruling impacts five of the six Patents-in-Suit which contain those terms: the '206, the '374, the '876, the '745, and the '746 Patents (collectively, the "Smoke Sensor Patents"). *See* (*id.*, at 8).

On June 10, 2024, College Products filed a motion for partial summary judgment seeking a determination that the Smoke Sensor Patents are invalid as a matter of law based on the Court's indefiniteness finding. (Doc. 146).

On June 28, 2024, Intirion filed a motion for reconsideration of the Court's claim construction Order. (Doc. 154). In that motion, Intirion asked the Court to withdraw its finding that the terms "level of smoke," "amount of smoke," and "dangerous condition" are indefinite, and reconstrue those terms as having their plain and ordinary English meanings. (*Id.*).

The same day, on June 28, 2024, Intirion filed this motion to stay. (Doc. 155). In its motion, Intirion first asks the Court for an extension of the deadline to respond to College Products' motion for partial summary judgment of invalidity pending resolution of Intirion's motion for reconsideration of the Court's claim construction order. Because

---

[2] On May 22, 2024, College Products filed a motion to amend its counterclaim seeking to add a counterclaim of false patent marking. (Doc. 135). On August 7, 2024, the Court denied this motion. (Doc. 165).

Intirion has already filed a response to College Products' motion for partial summary judgment, however, this first part of Intirion's motion is now moot.[3] *See* (Doc. 157).

Intirion further requests (in the alternative to the now-mooted request to extend the deadline to respond to College Products' motion for partial summary judgment) for the Court to stay Counts I through VI of Intirion's first amended complaint (i.e., its claims of infringement of the Patents-in-Suit), (Doc. 62), and all remaining counterclaims in College Products' second amended answer and counterclaim (i.e., counterclaims which seek declaratory judgments of invalidity and non-infringement of the Patents-in-Suit), (Doc. 70), along with a stay of the Court's decision on College Products' motion for partial summary judgment pending a final written decision by the PTAB in the now-instituted PGR proceedings. Intirion also requests that its two remaining claims—namely, Count VII (false advertising and unfair competition under the Lanham Act) and Count VIII (tortious interference with prospective business relations)—be allowed to proceed under the Court's Scheduling Order and Discovery Plan. *See* (Doc. 155-1, at 9); *see also* (Doc. 62, at 22–23) (erroneously numbering Intirion's seventh claim as "Count 5" and eighth claim as "Count 6").

On July 8, 2024, College Products filed its resistance to Intirion's motion to stay. (Doc. 156). On July 15, 2024, Intirion filed its reply. (Doc. 162).

---

[3] Prior to Intirion's filing of this motion to stay and its contemporaneously filed motion for reconsideration on June 28, 2024, Intirion filed an unresisted motion for extension of time to file a resistance to College Products' motion for partial summary judgment on June 21, 2024, (Doc. 150), which the Court granted on June 24, 2024 (Doc. 151), extending the deadline for Intirion to respond to College Products' motion for partial summary judgment to July 8, 2024. Then, on June 28, Intirion filed this motion. (Doc. 155). By July 8, 2024, the Court had not yet ruled on this first aspect of Intirion's motion in which Intirion requested further extension of the deadline to respond to College Products' motion for summary judgment pending resolution of Intirion's motion for reconsideration. Thus, on July 8, 2024, Intirion proceeded to file a resistance to College Products' motion for partial summary judgment, in compliance with the operative deadline for doing so in the absence of a ruling from the Court on this motion regarding a further extension.

As for the relevant litigation deadlines in the case thus far, on August 15, 2023, the Court issued an initial scheduling Order setting deadlines up to the point of claim construction. (Docs. 75 & 76). After the Court entered its claim construction Order on May 31, 2024, (Doc. 140), the Court held a scheduling status conference with the parties on July 8, 2024, to discuss deadlines for the remainder of the case, (Doc. 158). On July 11, 2024, the Court entered a second scheduling Order setting the following deadlines to govern all claims (both patent-related and non-patent related): fact discovery to be completed by October 21, 2024; expert reports to be disclosed between November 2024 and January 2025; expert discovery to be completed by February 18, 2025; and dispositive motions to be filed by March 10, 2025. (Doc. 159). By a separate Order, the Court scheduled trial to begin September 2, 2025. (Doc. 160).

## III.    DISCUSSION

The Leahy-Smith America Invents Act of 2012 ("AIA") created a system for third parties to challenge the patentability of issued patent claims at the PTAB to provide "quick and cost effective alternatives to litigation," which includes PGR and inter partes review ("IPR") (along with another type of proceeding called "covered business method review"). *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364, 1367–68 (Fed. Cir. 2018); *see also* USPTO Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48,680, 48,680 (Aug. 14, 2012) (to be codified at 37 C.F.R. pt. 42) ("The purpose of the AIA and this final rule is to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs. . . . The USPTO is engaged in a transparent process to create a timely, cost-effective alternative to litigation."). In general, PGR must be sought within nine months of the date of the grant of a patent, whereas IPR may be sought at any time once the patent has issued, as long as PGR is not available and any PGR

6

initiated in that timeframe has been completed. *See* 35 U.S.C. §§ 311(c), 321(c). PGR allows a third party to challenge a patent on any ground for invalidity under Title 35, United States Code, Section 282(b)(2) or (3). *See* 35 U.S.C. § 321(b). IPR, on the other hand, is narrower than PGR and permits challenges to validity on a ground under Title 35, United States Code, Section 102 or 103 and only on the basis of prior art patents and printed publications. *See* U.S.C. § 311(b). Thus, a patent may be attacked in a PGR proceeding on the same bases as IPR but also on additional bases, including, for instance, indefiniteness under Section 112. *Compare* 35 U.S.C. § 321(b), *with id.* § 311(b). Once PGR has been instituted, the PTAB must issue its decision within one year, which can only be extended for an additional six months for good cause. *Id.* § 326(a)(11); 37 C.F.R. § 42.200(c).

A district court has the inherent power and discretion to manage its docket, and this includes the authority to stay litigation pending the conclusion of a USPTO reexamination of a patent. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). Courts generally consider three factors in deciding whether litigation should be stayed pending parallel patent proceedings: "(1) the stage of the court proceedings; (2) whether a stay of litigation will simplify the issues in question and facilitate the trial of the case; and (3) whether a stay would unduly prejudice the non-moving party or would present a clear tactical disadvantage for that party." *Guntert & Zimmerman Constr. Div., Inc. v. Gomaco Corp.*, No. 20-CV-4007-CJW-KEM, 2021 WL 7185089, at *2 (N.D. Iowa Jan. 13, 2021) (cleaned up). The Federal Circuit has further held, however, that "[a]ttendant to the district court's inherent power to stay proceedings is the court's discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016) (concluding that the court properly considered the burden of litigation on the court and the parties when refusing to lift a stay of the proceedings). "The party seeking to

stay the litigation bears the burden of showing that the stay is the appropriate course of action." *Oxygenator Water Techs., Inc. v. Tennant Co.*, No. 20-cv-0358 (ECT/HB), 2021 WL 4622241, at *2 (D. Minn. Oct. 7, 2021).

Courts have observed that "it is often prudent for a court to await the [USPTO's] reassessment of the patents at issue before resuming litigation over the validity, enforceability or infringement of those patents." *Telebrands Corp. v. Seasonal Specialties, LLC*, No. 17-cv-4161 (WMW/HB), 2018 WL 1027452, at * 2 (D. Minn. Feb. 23, 2018) (internal quotation marks omitted). Thus, "[a]lthough the decision to grant a stay remains firmly in the district court's discretion, the interests of judicial economy and deference to the [USPTO's] expertise have given rise to a liberal policy in favor of granting stays." *Guntert & Zimmerman*, 2021 WL 7185089, at *2 (internal quotation marks omitted) (second alteration in original). Indeed, courts "routinely grant" stays pending USPTO reexamination. *Arctic Cat Inc. v. Polaris Indus. Inc.*, No. 13-3579 (JRT/FLN), 2015 WL 6757533, at *2 (D. Minn. Nov. 5, 2015) (internal quotation marks omitted). Moreover, "the case for a stay is stronger after post-grant review has been instituted." *Oxygenator Water Techs.*, 2021 WL 4622241, at *2 (alteration omitted) (quoting *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014)).

### A. *Stage of the Court Proceedings*

Here, the stage of the court proceedings weighs somewhat against a stay. Under this factor, courts consider "whether discovery is complete and whether a trial has been set." *DMF, Inc. v. AMP Plus, Inc.*, No. 2:18-cv-07090-CAS(GJSx), 2019 WL 9077477, at *6 (C.D. Cal. Dec. 13, 2019) (internal quotation marks omitted). Also important to evaluating this factor is the district court's "expenditure of resources" by the time the stay is proposed. *Id.* (citation omitted). Courts have held that "a stay is not appropriate where the parties have fully briefed the issue of claim construction, attended a *Markman*

hearing, and received a claim construction order." *Id.* (internal quotation marks omitted). Here, the Court has indeed issued its claim construction Order, discovery is well underway, and trial has been set for just over a year away. These items thus weigh against a stay, as the parties and the Court have expended considerable resources to carry the case to this point, including completion of the claim construction phase of the case along with several rulings on contested motions. *See id.*; *cf. Guntert & Zimmerman*, 2021 WL 7185089, at *3 (finding the stage of proceedings factor did "not weigh strongly in either direction" when, on the one hand, parties had exchanged thousands of pages of documents in discovery, litigated a preliminary injunction, and completed claim construction briefing but, on the other hand, still had "plenty of outstanding discovery," the Court had not yet ruled on claim construction, and trial was sixteen months away); *but see Oxygenator Water Techs.*, 2021 WL 4622241, at *7 ("Stays are favored when the most burdensome stages of the case—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future.") (internal quotation marks omitted).

College Products accuses Intirion of gamesmanship on the basis of Intirion's motion for reconsideration of the claim construction Order after the Court found the claim terms "level of smoke," "amount of smoke," and "dangerous condition" indefinite as a matter of law, filed in conjunction with Intirion's motion to stay. *See* (Doc. 156, at 20). College Products argues that Intirion made its motions to reconsider and to stay "to stall the Court's inevitable invalidity decision" were the Court to rule on College Products' motion for partial summary judgment as to the Smoke Sensor Patents. (*Id.*). The Court finds that although this volley of motions has indeed throttled forward progression of the case, there are additional and important aspects to the procedural picture here, to be explained. Notwithstanding that the stage of the proceedings factor weighs against a stay,

9

Intirion's motion highlights certain benefits to the proposed stay pending resolution of the PGRs—those benefits consisting mainly of simplification of the matters at issue and aiding the Court with the USPTO's expertise—which ultimately justifies such a stay.

### B.     Simplification of the Issues

Here, a final written decision from the PTAB on the PGRs would simplify the matters at issue and aid the Court in seeing this case to a sound resolution. As explained above, the '745 and '746 Patents are the subject of the PGRs for which College Products petitioned and by which College Products is challenging the patentability of those patents before the PTAB. Those two patents contain terms which the Court found indefinite: "level of smoke" and "amount of smoke." *See* (Doc. 140, at 8). Those two patents also belong to the five Smoke Sensor Patents which College Products urges the Court to hold invalid for indefiniteness in its motion for partial summary judgment because those patents contain those terms which the Court found indefinite. (Doc. 146). College Products, in resisting Intirion's motion to stay, emphatically urges the Court to simply grant its motion for partial summary judgment, which asks the Court to hold the claims of those patents invalid (along with the other Smoke Sensor Patents) on the basis of the Court's claim construction order finding their terms indefinite and, furthermore, in granting College Products' motion, to flatly deny Intirion's request for reconsideration of the Court's claim construction order. *See* (Doc. 156, at 5). College Products asserts that the "case is over for those patents"—i.e., the Smoke Sensor Patents, including the '745 and '746 Patents—and that College Products "is now at the finish line" with its motion for partial summary judgment of invalidity. (*Id.*, at 5, 23).

Yet, the structure of the AIA, which created the system of PTAB reexamination of patents as an alternative to litigation, is designed to prevent those who would challenge patentability from taking multiple "bites at the apple," so to speak. The estoppel

provision of Title 35, United States Code, Section 325(e)(2) provides, in relevant part, as follows:

> The petitioner in a post-grant review of a claim in a patent under this chapter that results in a final written decision [issued by the PTAB] . . . may not assert . . . in a civil action arising [under the patent laws] . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that post-grant review.

35 U.S.C. § 325(e)(2). In its PGR petitions, College Products challenged the validity of the '745 and '746 Patents on numerous grounds, including alleged indefiniteness under Section 112 based on the claim terms "operative connection," "sensing the level of smoke continuously," and "preset minimum period." (Docs. 156-1, at 95–96; 156-2, at 93–97). College Products conceded that it did not challenge the '745 and '746 Patents as invalid for indefiniteness based on the terms "level of smoke" or "amount of smoke" in the PGRs. *See* (Doc. 156, at 9). Thus, Intirion contends that once the PTAB issues its final written decisions on the PGRs of the '745 and '746 Patents, College Products will be estopped under Section 325(e) from asserting any invalidity arguments not raised during the PGRs, including the argument upon which it asserts those patents to be invalid in its motion for partial summary judgment—i.e., that they contain the terms "level of smoke" and "amount of smoke," which the Court found indefinite. *See generally* (Doc. 162, at 2–5).

College Products argues that if Section 325(e) estoppel were to prevent College Products from arguing invalidity on grounds not raised during the PGRs, such estoppel would not apply until *after* the PTAB issues its final written decisions on or before April 10, 2025. (Doc. 156, at 16). Yet, as Intirion prudently observes, even though the Court could rule on College Products' partial motion for summary judgment as to the '745 and '746 Patents before the PTAB issues its final written decision, doing so would run the risk of producing inconsistent rulings on the validity of those patents. (Doc. 162, at 5).

College Products, on the other hand, urges the Court to nevertheless press the litigation forward without heed for any potential estoppel issues under Section 325(e) which may arise upon issuance of the PTAB's final written decision and despite any guidance that the USPTO could provide to the Court with respect to revisiting claim construction, instead urging the Court to double down on its claim construction Order finding the terms "level of smoke," "amount of smoke," and "dangerous condition" indefinite. *See* (Doc. 156, at 21–22). The Court finds the course mapped by Intirion in favor of a stay is the wiser way forward.

The Court values the expertise of the USPTO, and the Court finds that regardless of outcome of the PGRs as to the patentability of the '745 and '746 Patents, the Court would benefit from the PTAB's final written decision on those patents when the Court rules on Intirion's motion for reconsideration of the Court's claim construction Order and College Products' motion for partial summary judgment. *See Oticon A/S v. GN Resound A/S*, No. 15-cv-2066 (PJS/HB), 2015 WL 5752429, at *4 (D. Minn. Aug. 5, 2015) ("Knowing whether those claims [under reexamination in IPR] are valid or not, and why, will assist this Court."). Also, there is meaningful overlap between the '745 and '746 Patents and the three other Smoke Sensor Patents (i.e., the '206, the '374, and the '876 Patents), as all use the interrelated claim terms "level of smoke," "amount of smoke," or "dangerous condition." *Cf. Oxygenator Water Techs.*, 2021 WL 4622241, at *6 ("[T]he PTAB's analysis of the references that are at issue in the IPR may well shed light on and shape the arguments about those same references as they bear on the other two patents-in-suit. The value of [the PTAB's] expertise is of primary importance.") (internal quotation marks omitted); *Graphic Packaging Int'l, Inc. v. Inline Packaging, LLC*, No. 15-cv-3476 (ADM/LIB), 2016 WL 11641977, at *5 (D. Minn. Apr. 6, 2016) ("[C]ourts of this District have identified a number of benefits that are associated with staying patent litigation pending resolution of IPR proceedings by the [USPTO] even if the [USPTO]

does not resolve all of the patent claims at issue in the litigation[.]") (emphasis omitted). By refraining from ruling on Intirion's motion to reconsider the Court's claim construction until the PTAB has issued its final written decisions on the '745 and '746 Patents, the Court stands to be better informed in deciding whether Intirion's arguments are meritorious. Also, a stay pending the outcome of the PGRs would indeed help to alleviate speculation as to the effect of estoppel under Section 325(e) and would preclude the potential need to later revisit a decision on College Products' partial motion for summary judgment with respect to invalidity positions it asserts therein. *See, e.g.*, *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 713–15 (Fed. Cir. 2021) (applying estoppel on appeal, despite a previous trial, appeal, and remand, rejecting an argument that estoppel of Section 112 invalidity positions did not apply because the district court issued a claim construction after the PGR petition was filed). Because the outcome of the PGRs will inform the Court's respective decisions on Intirion's motion for reconsideration of claim construction and College Products' motion for partial summary judgment (the latter being potentially affected, or even mooted, either by the PTAB's final written decision and/or the Court's ruling on Intirion's motion for reconsideration), the Court finds the matters at issue would be simplified by staying the case until the PTAB issues its final written decision.

### C.  *Prejudice or Clear Tactical Disadvantage*

As for the issue of prejudice, the Court finds the benefits of a stay pending resolution of the PGRs outweigh any potential prejudice to College Products. "In determining whether a stay would be unduly prejudicial, courts often look at the timing of the stay request, the timing of the patent review request, the status of the PTAB process, and the relationship in the marketplace between the parties." *Centripetal Networks, Inc. v. Palo Alto Networks, Inc.*, No. 2:21cv137 (RCY), 2022 WL 610176, at *5 (E.D. Va. Mar. 1, 2022). Courts have found that "[d]elay alone does not constitute

unfair prejudice" because "protracted delay is always a risk inherent in granting a stay, yet courts continue to stay actions pending reexamination." *G.W. Lisk Co. v. Power Packer N. Am., Inc.*, 591 F. Supp. 3d 391, 395 (S.D. Iowa 2022) (citations and internal quotation marks omitted).

Here, Intirion requested the stay roughly two months after the PTAB instituted PGR on the '745 and '746 Patents and one month after the Court's claim construction Order. As explained above, Intirion filed its motion to stay contemporaneously with its motion for reconsideration of the Court's claim construction Order, both of which are tied to College Products' motion for partial summary judgment and both of which came two weeks after College Products' filed its motion following the Court's claim construction Order. And as explained above, Intirion's motion to stay raises important issues about the interplay between the PGRs and the now-pending motions—namely, the possibility of estoppel under Section 325(e) with respect to College Products' invalidity arguments, as well as the benefits to the Court of having the PTAB's final written decisions in moving forward on those motions and the remainder of the case. Under these circumstances, the Court finds the timing of Intirion's stay request in relation to the PGRs and College Products' motion for partial summary judgment does not unduly prejudice College Products.

Most importantly, it was College Products who petitioned for the PGRs seeking to challenge the validity of the '745 and '746 Patents.[4] Although College Products received a favorable result in the Court's subsequent claim construction Order with respect to the indefiniteness findings, College Products also opted to avail itself of the alternative procedures of PGR to challenge the validity of the '745 and '746 Patents, the

---

[4] College Products is indeed correct in its observation that this matter is atypical of the usual situation, in which it is generally the defendant-petitioner who attempts to stay the district court proceeding pending a final written decision in a PGR or IPR, and the plaintiff-patentee who typically fights the stay. (Doc. 156, at 8).

result of which College Products may be forced to accept. *See* 35 U.S.C. § 325(e); *see also KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 WL 708661, at *3 (N.D. Cal. Mar. 16, 2006) ("[P]arties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework.") (quoting *Pegasus Dev. Corp. v. DirecTV, Inc.*, 2003 WL 21105073, at *2 (D. Del. May 14, 2003)). College Products is entitled to invoke the reexamination process to attack the validity of Intirion's patents under the AIA framework, but that framework also affords Intirion the right to rely upon that outcome and be free from another attack, thus avoiding "the two-forum problem that [Section] 325(e) is addressing" via estoppel. *Olaplex*, 855 Fed. App'x at 715; *see also Guntert & Zimmerman*, 2021 WL 7185089, at *4 ("[E]ven if the [PTAB] does not invalidate any claims, [the IPR-petitioner] will be estopped from raising any invalidity argument that it could have raised in the IPR proceeding, including its arguments for invalidity[.]"). The present uncertainty as to the outcome of those reexaminations renders a stay most appropriate. Finally, as for the status of the PTAB process, the PGRs are already underway, weighing against prejudice. *See Oxygenator Water Techs.*, 2021 WL 4622241, at *2 ("[T]he case for a stay is stronger after post-grant review has been instituted.") (alteration in original) (quoting *VirtualAgility Inc.*, 759 F.3d at 1316).[5] In sum, the Court finds the benefits of

---

[5] The Court notes that the parties are direct marketplace competitors, but neither offers argument on the significance of this fact in relation to the proposed stay. Intirion simply asserts that College Products "cannot allege any harm that cannot be compensated by an award of money damages," and College Products responds that Intirion "has failed to articulate any quantifiable damages that could compensate College Products if the Court stays the patent issues in this case instead of issuing a judgment of invalidity[.]" (Docs. 155-1, at 17; 156, at 24). Although Intirion bears the burden of showing a stay is appropriate, *Oxygenator Water Techs*, 2021 WL 4622241, at *2, one district court has observed the following:

> [A]bsent a showing that the non-movant competitor would in fact suffer some specific harm that could not be remedied by money damages, the courts of [the Eighth Circuit] have found that a mere conclusory assertion that the parties are

a stay pending resolution of the PGRs outweigh any potential prejudice to College Products.

The Court agrees with College Products, however, that Intirion's proposal to continue forward under the Court's current scheduling order and discovery plan in litigating only Intirion's non-patent law claims—namely, its claims of false advertising and unfair competition under the Lanham Act and tortious interference with prospective business relations—would be unduly prejudicial to College Products and would be highly inefficient. To bifurcate the case in this way would result in two separate rounds of completing fact and expert discovery, two sets of expert reports, two sets of dispositive motions, and two trials. Thus, the Court finds a stay of the case in its entirety to be the better option.

## IV. CONCLUSION

For these reasons, the Court **grants** Intirion's motion to stay. (Doc. 155). All discovery and all other proceedings in this case, including College Products' motion for partial summary judgment (Doc. 146) and Intirion's motion for reconsideration (Doc. 154), are **stayed** until the PTAB issues a final written decision on the PGR proceedings at issue. The Court does not decide at this time whether the case should be stayed pending exhaustion of any or all appeals from that decision.

The Court further **orders** the parties to submit, within 10 days after the PTAB issues its final written decision on the PGRs, a joint report outlining the outcome of the PGRs with regard to the '745 and '746 Patents, and the parties' joint proposal for a schedule governing all matters bearing on discovery, motions, settlement, and trial (or

---

direct competitors is insufficient to show that a grant of a stay pending the completion of IPR proceedings would prejudice the nonmovant.

*Graphic Packaging*, 2016 WL 11641977, at *3 (collecting cases). Here, College Products has not shown that a stay would amount to undue prejudice considering the parties' position as direct competitors.

separate schedules and proposals if they cannot agree), including whether either or both parties seek an extension of the stay pending the outcome of any appeals of the PTAB's decision.

**IT IS SO ORDERED** this 9th day of August, 2024.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa